JAMES McGLYNN, Appellant, *against* JAMES M. SEYMOUR, Respondent.

(Decided February 6th, 1888.)

A complaint alleged that defendant, knowing that he did not own certain mining property, conveyed the same to a company organized for the purpose of working such property; that the company issued certificates of stock, which were transferred to defendant in payment for such property; that plaintiff, believing these certificates to be valuable, bought some of them; and that the certificates were intrinsically worthless, though an apparent but fictitious value was given to them by " wash" sales at the mining exchange which the defendant made. It did not allege that defendant made any representations to plaintiff, directly or indirectly, nor that defendant intended that any representations made by him should be communicated to the public or to plaintiff, nor that plaintiff relied upon the representations made by defendant to the mining company that defendant owned and had a right to convey the mining property in question. *Held*, that the complaint did not state facts sufficient to sustain an action for deceit.

APPEAL from an interlocutory judgment of this court overruling a demurrer to a complaint.

The complaint alleged that defendant, the locator of certain mining claims in California, procured the incorporation under the laws of New York of the South Pacific Mining Company, a corporation organized for the purpose of mining, reducing, refining, etc., of ores, with a capital stock of $500,000, divided into a like number of shares; that he caused the officers of such company to issue to himself the entire capital stock in payment of a conveyance of the mining claims, and also procured the listing of the securities of such corporation on the New York Mining Stock Exchange, on various representations and reports as to the condition of the company and the value of its properties, and secured the confidence of the officers of the exchange and of plaintiff by procuring well-known men of financial ability to accept offices in such company; that the defendant from time to time gave to members of such stock exchange

McGlynn *v.* Seymour.

orders to sell large quantities of the stock, and to others of said members orders to buy at prices fixed by the defendant; that the execution of such orders created a large apparent demand for the stock, and gave it an apparent market value; that plaintiff, in reliance upon the financial standing of the officers of the company, and in ignorance of the fraudulent acts of defendant, believing that the stock was fully paid and lawfully issued, and that the price at which it was selling upon the exchange was created by *bona fide* purchases and sales and represented its true market value, and in reliance upon the representations contained in said certificates, in good faith purchased upon the exchange, through a member thereof, 200 shares of the stock for $17,035, being the market price upon said exchange; that the lots located as mining lots were not open to location, and neither defendant nor his company acquired any title thereto, all of which was well known to defendant; that the stock was and is and always has been perfectly worthless, and that the prices at which plaintiff purchased were wholly fictitious and created by the sales and purchases made on defendant's order, for the purpose of deceiving the public, and that the company was organized and the stock issued for the sole purpose of selling said stock to the public, and all the alleged acts were done in pursuance of a corrupt design to cheat and defraud the public, including plaintiff. The defendant demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action. On the argument of the demurrer at the Special Term, the following opinion, referred to in the subsequent opinion of the General Term, was delivered.

VAN HOESEN, J. — The persons issuing a prospectus are held liable for its statements to all who are induced by a reliance upon them to do the act that the prospectus invites. This is upon the theory that the statements of the prospectus are representations addressed by its authors to the public generally, and to those persons particularly who read the prospectus, take its suggestions, and accept the offers

that it contains.   It was the object of the plaintiff to bring this case within the rule applicable to prospectuses, but he has not succeeded.   He does not allege that the defendant made any representations to him, directly or indirectly, nor does he allege that the defendant intended that any representations made by him to other parties should be communicated to the public or to the plaintiff.   Nor does he allege that he relied upon the representations made by the defendant to the South Pacific Mining Company, that he, the defendant, owned, and had a right to convey, the mining property in question.   Nor is it apparent how the representations that the defendant made to the company respecting his ownership of the property should, in the natural and ordinary course of events, have led to the purchase by the plaintiff of certain shares of the stock of the company.

The only parts of the complaint that require notice are the allegations that the defendant, knowing that he did not own it, conveyed mining property to the company; that the company, believing itself to be the owner of the property, issued certain certificates of stocks ; that the plaintiff, believing these certificates to be valuable, bought some of them ; that the certificates were intrinsically worthless, though an apparent but fictitious value was given to them by " wash " sales at the mining exchange, which the defendant had made.   These allegations cannot, in my opinion, support an action against the defendant.   If they be true, the defendant defrauded the company by selling to it property to which he had no title, but he did not have any transactions with the plaintiff, nor did he make any representations to him directly, or through the medium of any other person or of any document.

There is no foundation, therefore, for an action of deceit.

Now, will the allegation that the defendant caused "wash" sales to be made at the mining exchange sustain an action ? A " wash " sale is at most an affirmation that the buyer is paying a certain price for a certain lot of stock.   It is not an affirmation that the stock has any intrinsic value, that a company owns any property of value, or that the buyer will

ever again bid the same price for the stock. It is made on account of persons who are anonymous. If a man buys stock because he is led by " wash " sales to believe that he can make a fortunate speculation, he cannot have an action of deceit against those who have made the " wash " sales. The sales, though fictitious, are not representations of any fact on which a man has a right to rely. They are at most false affirmations of an opinion as to value. Such affirmations are not regarded as statements of fact. " Wash " sales are condemned, as they ought to be, because they are fictitious, but they are not false representations, made to the public in general, which give a right of action to any one who is led by them to take an erroneous view of market prices and to invest unprofitably in consequence.

Demurrer sustained, with leave to amend complaint on payment of usual costs within twenty days.

From the judgment entered on this decision, plaintiff appealed.

*Jno. H. Hamilton*, for appellant.

*Hawkesworth & Rankin*, for respondent.

PER CURIAM. — [Present, LARREMORE, Ch. J., ALLEN and BOOKSTAVER, JJ.] — As we read the complaint, this is an action for deceit. We have searched in vain through its various allegations — most of them made upon information and belief — to find an averment of any substantive fact that the plaintiff, acting upon any representations made by the defendant to him directly or indirectly, was influenced in his action in the purchase of stock of the " South Pacific Mining Company." Such fact should be affirmatively stated in order to bring this case within the line of authorities cited by the counsel for the appellant. Granted, for the sake of argument, that the company was defrauded by the sale to it of property to which defendant had no title, what *personal* liability has he incurred to one, who, in the ordinary

course of business, purchases stock which he claims to have been fraudulently issued?

If all the facts, instead of the conclusions drawn from them, had been stated in the complaint, it might appear that such conclusions were erroneous and no right of action existed.

Judge VAN HOESEN has covered the whole ground of the controversy in his decision, which it is unnecessary for us to supplement.

The interlocutory judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs.